THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELLE BRUTO DA COSTA, Individually and as personal representative of the Estate of MARK BRUTO DA COSTA, deceased,

Plaintiffs,

v.

OLYMPUS AMERICA INC., OLYMPUS CORPORATION, OLYMPUS MEDICAL SYSTEMS CORP., OLYMPUS CORPORATION OF THE AMERICAS, OLYMPUS SURGICAL TECHNOLOGIES AMERICA, AIZU OLYMPUS CO. LTD, AOMORI OLYMPUS CO. LTD., SHIRAKAWA OLYMPUS CO. LTD.,

Defendants.

No. 2:26-cv-01977-RSL

**DEFENDANTS OLYMPUS AMERICA INC.'S, OLYMPUS CORPORATION OF THE AMERICAS', AND OLYMPUS SURGICAL TECHNOLOGIES AMERICA'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS**

NOTE ON MOTION CALENDAR:

November 16, 2026

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

BACKGROUND ........ 3

I. PRIOR LAWSUIT ........ 3

A. First Complaint ........ 3

B. Transfer and Dismissal ........ 4

II. THE SECOND COMPLAINT ........ 5

LEGAL STANDARD ........ 6

I. MOTION TO DISMISS ........ 6

II. MOTION TO TRANSFER ........ 7

ARGUMENT ........ 7

I. PLAINTIFF'S CLAIMS AGAINST THE SERVED DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND VENUE. ........ 7

A. This Court lacks personal jurisdiction over the Served Defendants. ........ 8

1. Plaintiff does not allege general jurisdiction. ........ 8

2. This Court lacks specific jurisdiction. ........ 9

a. Plaintiff's claims do not arise out of or relate to the Served Defendants' Washington contacts. ........ 9

b. This Court lacks personal jurisdiction over OSTA for additional, independent reasons. ........ 11

B. Plaintiff should not be allowed to forum shop her Complaint; Venue is improper in the Western District of Washington. ........ 12

II. PLAINTIFF FAILS TO PLEAD VIABLE CLAIMS FOR RELIEF. ........ 13

A. Plaintiff impermissibly lumps all Defendants together in a shotgun pleading. ........ 13

B. Plaintiff's fraud-based claims do not comport with Rule 9(b). ........ 14

C. Plaintiff has not identified a specific express warranty. ........ 16

D. Plaintiff's statutory claims subsume her common law claims under Washington law. ........ 17

E. Plaintiff fails to state a manufacturing defect claim. .......................... 18

III. THIS COURT SHOULD OTHERWISE TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF ILLINOIS. ............................................... 18

A. Jurisdiction and venue are proper in the Northern District of Illinois. ........................................................................................ 19

B. Transfer is warranted for the convenience of the parties and witnesses and in the interest of justice. ............................................... 20

C. The doctrine of judicial estoppel bars Plaintiff from arguing otherwise. ........................................................................................ 25

CONCLUSION ........................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*389 Orange St. Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) ........................................................................ 15

*Adachi v. Carlyle/Galaxy San Pedro, L.P.*,
595 F. Supp. 2d 1147 (S.D. Cal. 2009) ........................................................ 21

*Ahlstrom v. DHI Mortg. Co.*,
21 F.4th 631 (9th Cir. 2021) .......................................................................... 14

*Amazon.com v. Cendant Corp.*,
404 F. Supp. 2d 1256 (W.D. Wash. 2005) ................................................ 20, 22

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ........................................................... 15

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) .......................................................................... 13

*Bd. of Educ of City of Chi. v. A, C & S, Inc.*,
546 N.E.2d 580 (Ill. 1989) ............................................................................. 17

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) .......................................................................................... 8

*Bruto da Costa v. Olympus Am. Inc., et al.*,
No. 2:25-cv-00903 (W.D. Wash. May 14, 2025) ....................................... *passim*

*Bryant v. Wyeth*,
879 F. Supp. 2d 1214 (W.D. Wash. 2012) ...................................................... 17

*Burri L. PA v. Skurla*,
35 F.4th 1207 (9th Cir. 2022) ........................................................................... 6

*Carlin v. DairyAmerica, Inc.*,
705 F.3d 856 (9th Cir. 2013) ............................................................................ 7

*Davis v. Cranfield Aerospace Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023) ............................................................... 10, 11, 19

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) ........................................................................... 7

*Doyle v. Bayer Corp.*,
2025 WL 1666261 (W.D. Wash. June 12, 2025) .......... 17, 18

*Fellores v. Winter*,
2007 WL 473727 (E.D. Va. Feb. 8, 2007) .......... 27

*In re Ferrero Litig.*,
768 F. Supp. 2d 1074 (S.D. Cal. 2011) .......... 20

*Fleming v. Matco Tools Corp.*,
384 F. Supp. 3d 1124 (N.D. Cal. 2019) .......... 24

*Fluence Energy, LLC v. M/V BBC Finland*,
584 F. Supp. 3d 878 (S.D. Cal. 2022) .......... 7

*Fraser v. Rodriguez-Espinoza*,
2014 WL 4783095 (N.D. Ill. Sep. 24, 2014) .......... 27

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 13, 14

*Glaxo Grp. Ltd. v. Genentech, Inc.*,
2010 WL 1445666 (N.D. Cal. Apr. 12, 2010) .......... 23

*Goldwater Bank, N.A. v. Elizarov*,
822 F. Supp. 3d 1105 (C.D. Cal. 2026) .......... 12, 25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 8, 9

*In re Hall, Bayoutree Assocs., Ltd.*,
939 F.2d 802 (9th Cir. 1991) .......... 12, 13

*Hansen v. Combined Transp.*,
2013 WL 5969863 (W.D. Wash. Nov. 7, 2013) .......... 20, 21, 22, 24

*Huey v. Honeywell, Inc.*,
82 F.3d 327 (9th Cir. 1996) .......... 10, 11, 19

*InMode Ltd v. BTL Inds., Inc.*,
756 F. Supp. 3d 809 (C.D. Cal. 2024) .......... 22

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .......... 8

*Interstate Fire & Cas. Co. v. Underwriters at Lloyd's*,
139 F.3d 1234 (9th Cir. 1998) .......... 26

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ............ 20, 24, 25

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............ 15

*LegalForce, Inc. v. Legalzoom.com, Inc.*,
2018 WL 6179319 (C.D. Cal. Nov. 27, 2018) ............ 11

*Macias v. Saberhagen Holdings, Inc.*,
282 P.3d 1069 (Wash. 2012) ............ 17

*Mohsen v. Morgan Stanley & Co., Inc.*,
2016 WL 9686985 (C.D. Cal. Mar. 24, 2016) ............ 10, 11, 19

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ............ 25, 26

*Park v. Dole Fresh Vegetables, Inc.*,
964 F. Supp. 2d 1088 (N.D. Cal. 2013) ............ 21, 22, 24

*Piedmont Label Co. v. Sun Garden Packing Co.*,
598 F.2d 491 (9th Cir. 1979) ............ 6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ............ 11, 19

*Rubio v. Monsanto Co.*,
181 F. Supp. 3d 746 (C.D. Cal. 2016) ............ 19, 22, 23

*Sanact, Inc. v. US Pipelining LLC*,
2018 WL 3213612 (D. Haw. June 29, 2018) ............ 27

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ............ 6, 8

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ............ 9

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ............ 7, 25

*Stockwell v. Sumitomo Pharma Am., Inc.*,
2026 WL 791614 (W.D. Wash. Mar. 20, 2026) ............ 17, 18

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ............ 15

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) .......... 19

*Tapia v. Davol, Inc.*,
116 F. Supp. 3d 1149 (S.D. Cal. 2015) .......... 16

*Travelers Prop. Cas. Co. of Am. v. Expeditors Int'l of Wash.*,
626 F. Supp. 3d 1193 (W.D. Wash. 2022) .......... 20

*Velicer v. Falconhead Cap., LLC*,
2020 WL 1182962 (W.D. Wash. Mar. 11, 2020) .......... 16

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 15, 16

*Vivendi SA v. T-Mobile USA, Inc.*,
586 F.3d 689 (9th Cir. 2009) .......... 23

*Wagner v. Stratton Oakmont, Inc.*,
83 F.3d 1046 (9th Cir. 1996) .......... 24

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) .......... 15

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .......... 14

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
536 F.3d 663 (7th Cir. 2008) .......... 15

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .......... 11

*Zetz v. Boston Sci. Corp.*,
398 F. Supp. 3d 700 (E.D. Cal. 2019) .......... 16

**Statutes**

28 U.S.C. § 1332 .......... 19

28 U.S.C. § 1391(b)(1) .......... 12

28 U.S.C. § 1391(b)(2) .......... 12, 20

28 U.S.C. § 1391(c)(2) .......... 12

28 U.S.C. § 1404(a) .......... *passim*

28 U.S.C. § 1406(a) .......... 6, 13

Ill. Comp. Stat. 5/13-202 .......... 27

Ill. Comp. Stat. 5/13-213 .......... 27

Ill. Comp. Stat. 5/13-217 .......... 27

Ill. Comp. Stat. 180/2 .......... 27

RCW § 4.16.080(2) .......... 27

RCW § 7.72.010 .......... 18

RCW § 7.72.030(2)(a) .......... 18

RCW § 7.72.030(2)(b) .......... 16

RCW § 7.72.060(3) .......... 27

**Other Authorities**

Fed. R. Civ. P. 8 .......... 15

Fed. R. Civ. P. 9(b) .......... 13, 14, 15, 16

Fed. R. Civ. P. 12(b)(2) .......... 6, 11

Fed. R. Civ. P. 12(b)(3) .......... 6, 7

Fed. R. Civ. P. 12(b)(6) .......... 7

Fed. R. Civ. P. 45(c)(1) .......... 22

## INTRODUCTION

Plaintiff has already averred that the decedent contracted his infection that gives rise to this lawsuit from a medical procedure in Chicago. And she has already told this Court that her claims belong in Chicago "for the convenience of the parties and witnesses and in the interest of justice." But in a blatant attempt to concoct jurisdiction and venue, she dismissed her claims in the Northern District of Illinois, re-filed them here, and now claims the decedent acquired the same infection in *Seattle*. Conveniently, she scrubs all references to Decedent's Chicago procedure and her claim that the Decedent tested positive for the infection prior to ever having the procedure in Seattle.

This overt gamesmanship should not be permitted. The Complaint should be dismissed for lack of personal jurisdiction, lack of venue, or failure to state a claim because there is no true connection to this jurisdiction or venue, as well as a host of other facial deficiencies. In the alternative, the Court should transfer venue to the Northern District of Illinois. Indeed, judicial estoppel forecloses Plaintiff from arguing otherwise.

***First***, this Court should dismiss for lack of personal jurisdiction and improper venue because the Illinois procedure is central to her claims and there is no connection to Washington. Last year, plaintiff pleaded that Decedent's infection occurred in Chicago, specifically referencing medical records indicating the infection was detected before his Seattle procedure even occurred. Complaint, *Bruto da Costa v. Olympus Am. Inc., et al.*, No. 2:25-cv-00903 (W.D. Wash. May 14, 2025) (Dkt. 2) ("First Complaint") (Ex. 1). Because the operative events occurred in Illinois, not Washington, Plaintiff's claims do not directly arise out of or relate to the served Defendants' activities in this forum. This Court therefore lacks personal jurisdiction over the served Defendants and is not a proper venue.

***Second***, this Court should dismiss the complaint for failure to state a claim. In particular, (i) Plaintiff's shotgun pleading, in which she lumps together the alleged conduct of eight entities, does not satisfy federal pleading standards, (ii) Plaintiff's fraud-based claims are not pled with the requisite particularity, (iii) Plaintiff has not pled any actionable express warranty, (iv) many of Plaintiff's common law claims are subsumed by the Washington Product Liability Act (WPLA), and (v) Plaintiff has not pled a viable manufacturing defect claim.

***Third***, in the alternative, the case should be transferred to the Northern District of Illinois under § 1404(a), as plaintiff ***has already told this Court it should be*** "for the convenience of the parties and witnesses and in the interest of justice." Joint Stipulation to Transfer Venue, *Bruto da Costa v. Olympus Am. Inc., et al.*, No. 2:25-cv-00903 (W.D. Wash. Sep. 23, 2025) (Dkt. 12) (Ex. 2). The contacts relating to this cause of action, the location of (and access to) the relevant evidence, the ability to compel third-party witness testimony at trial, and Plaintiff's obvious forum-shopping all point to Chicago as the more appropriate forum.

Indeed, Plaintiff is judicially estopped from arguing otherwise. A party cannot deliberately change positions in an attempt to gain an unfair advantage. That is precisely what happened here. Plaintiff previously alleged the subject infection and alleged misconduct occurred in Chicago. She expressly stated to this Court and agreed in public filings that this case should be litigated in the Northern District of Illinois for the convenience of the parties and witnesses and in the interest of justice. And this Court accepted that position when it granted transfer.

This Court should therefore dismiss this case for lack of personal jurisdiction, lack of venue, or failure to state a claim. In the alternative, the Court should transfer venue to the Northern District of Illinois.

## BACKGROUND

### I. Prior Lawsuit

#### A. First Complaint

In May 2025, Plaintiff Michelle Bruto Da Costa asserted wrongful death, product liability, and negligence claims against three Olympus entities in the Western District of Washington. *See* First Complaint (Dkt. 2) (2:25-cv-00903) (Ex. 1). The First Complaint alleged that Decedent, Mark Bruto Da Costa, acquired vancomycin-resistant Enterococcus (VRE) bacteria, which caused his infection and ultimately his death.

Plaintiff claimed that Decedent acquired VRE during an "endoscopic retrograde cholangiopancreatography (ERCP) procedure at Northwestern Hospital in Chicago" that took place "[o]n May 15, 2023." *Id.* ¶ 27. The procedure allegedly used an "Olympus TJF-Q190V duodenoscope." *Id.* ¶ 24. Plaintiff blamed the TJF-Q190V for Decedent acquiring VRE.

Critically, Plaintiff asserted that "[j]ust three days" after the May 15 Chicago procedure, Decedent's "lab work . . . showed an increase in bilirubin to 1.26 mg/dL and a white blood cell count of 9.1—both . . . suggestive of early infectious or inflammatory response." *Id.* ¶ 28. "On May 22, 2023, further laboratory testing conducted by Labcorp confirmed rising infection markers: white blood cell count elevated to 11.9 and bilirubin to 2.3 mg/dL"—"confirm[ing] progression of the suspected biliary infection initially detected on May 18." *Id.* ¶ 29. "By May 27, 2023, lab work from Swedish Hospital demonstrated a white blood cell count surge to 17.58 and a bilirubin level of 3.4 mg/dL—consistent with advanced cholangitis and clear systemic infection." *Id.* ¶ 30.

Two days later, on May 29, 2023, Decedent checked in to "the University of Washington ER with right-sided pain, fever, and elevated lab markers." *Id.* ¶ 31.

According to the First Complaint, Decedent and his wife "reported concern that his symptoms were the result of a post-ERCP infection." *Id.* "During this hospitalization, he was diagnosed with complications consistent with [VRE]." *Id.* ¶ 32.

Two weeks later, on June 12, 2023, Decedent allegedly received a "second ERCP . . . due to worsening condition." *Id.* ¶ 33. In other words, Decedent's VRE-caused infection was confirmed weeks before his second ERCP procedure, and the second ERCP in Seattle was completed to address the already-acquired infection.

Decedent was later transferred to a hospital in Scottsdale, Arizona for "urgent paracentesis (drainage of ascites)." *Id.* ¶ 37. On June 17, 2023, Decedent entered septic shock, and was admitted to the Intensive Care Unit. *Id.* ¶¶ 38–39. He passed away on June 28, 2023. *Id.* ¶ 42.

### B. Transfer and Dismissal

In the First Complaint, Plaintiff pled that the relevant "ERCP procedure occurred in Illinois." *Id.* ¶ 3. On September 23, 2025, Plaintiff and Defendants Olympus Corporation of the Americas ("OCA"), Olympus America, Inc. ("OAI"), and Olympus Medical Systems Corporation ("OMSC")[1] jointly moved this Court to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Joint Stipulation, *Bruto da Costa*, No. 2:25-cv-00903 (Dkt. 12) (Ex. 2). The motion averred that transfer was proper "pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice." *Id.*

On September 24, "[u]pon consideration of the Parties' Joint Stipulation to Transfer Venue, and for good cause shown," the Court granted the motion and transferred the case to the Northern District of Illinois. Order (Dkt. 18) (2:25-cv-

[1] Gyrus ACMI, Inc. (d/b/a) Olympus Surgical Technologies America ("OSTA") was not a defendant in the First Complaint.

00903) (Ex. 3). One month later, Plaintiff voluntarily dismissed her claims without prejudice. *See* Dkts. 23, 24 (1:25-cv-12049, N.D. Ill.) (Exs. 4, 5).

**II. The Second Complaint**

On June 5, 2026, Plaintiff re-filed her claims against various Olympus entities—including five additional Olympus entities not named in the prior complaint—back in the Western District of Washington. *See* Complaint (Dkt. 1) (26-cv-1977) ("Second Complaint"). Like the First Complaint, the Second Complaint alleges that Decedent died from an infection caused by acquiring VRE from a contaminated "Olympus TJF-Q190V duodenoscope" device. *Id.* ¶¶ 1, 9. And it raises the same core legal claims, albeit with additional causes of action. *Id.* ¶¶ 119–275.

But there is a conspicuous change. Any mention of the Illinois procedure has been scrubbed. The only procedure mentioned in the Second Complaint is the second June 12, 2023 procedure that took place in Washington, *id.* ¶ 43—*after* Decedent's infection had been confirmed, according to the First Complaint.

The Second Complaint, in turn, asserts that the case should be litigated in Washington because "Decedent's endoscopic procedure using Defendants' product, which to a reasonable medical degree of scientific certainty caused Decedent's infection and eventual death, was performed in Seattle, Washington." *Id.* ¶ 35. The Complaint alleges personal jurisdiction over all eight Defendants as a collective because "Defendants transacted business within the State of Washington"—namely, by "employ[ing] sales representatives in [Washington] to sell their products throughout the State," including the duodenoscope used in the Washington procedure. *Id.* ¶¶ 37–40.

Plaintiff asserts claims for strict product liability for defective design, failure to warn, and defective manufacturing, *id.* ¶¶ 119–68; negligence and gross negligence, *id.* ¶¶ 169–84; breach of implied and express warranty, *id.* ¶¶ 185–200;

negligent and intentional infliction of emotional distress, *id.* ¶¶ 201–07; negligent misrepresentation, *id.* ¶¶ 208–18; fraud and fraudulent misrepresentation, *id.* ¶¶ 219–29; fraudulent concealment, *id.* ¶¶ 230–52; and outrage, wrongful death, loss of consortium, and punitive damages, *id.* ¶¶ 253–75. The Second Complaint refers to the eight Defendants in the collective, alleging that they designed, manufactured, marketed, and distributed the device, without identifying which entity performed any particular act. *Id.* ¶ 23–32, 44.

In September 2026, Plaintiff served the Second Complaint on OCA, OAI, and OSTA (hereinafter, "the Served Defendants"). No other defendant has been served.

## LEGAL STANDARD

### I. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of making a "prima facie showing" of jurisdictional facts and "cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (cleaned up). That requires showing that "each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction over that defendant." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022). In evaluating a motion to dismiss for lack of personal jurisdiction, the court considers the pleadings and affidavits filed by both sides. *Id.*

Rule 12(b)(3) provides that a defendant may move to dismiss a case for improper venue. A district court may, in turn, either dismiss the case or transfer to a district where venue is proper. *See* 28 U.S.C. § 1406(a). The plaintiff bears the burden of showing that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). A court may consider facts outside the pleadings

when deciding a Rule 12(b)(3) motion. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

Under Rule 12(b)(6), dismissal is appropriate where a complaint "fails to state a claim to relief that is plausible on its face." *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 866–67 (9th Cir. 2013) (cleaned up). The Court's review "is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice." *Id.* at 866 (citation omitted).

**II. Motion to Transfer**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Courts review motions to transfer under § 1404(a) "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (cleaned up). When "reviewing a [§ 1404(a)] motion to transfer venue . . . a court may consider evidence outside of the pleadings." *Fluence Energy, LLC v. M/V BBC Finland*, 584 F. Supp. 3d 878, 886 (S.D. Cal. 2022) (citation omitted).

## ARGUMENT

**I. Plaintiff's claims against the Served Defendants should be dismissed for lack of personal jurisdiction and venue.**

As the First Complaint makes clear, the procedure that allegedly caused Decedent's infection occurred in Illinois. Nothing about this controversy arises out of or relates to the Served Defendants' contacts with this forum; as such, the Court lacks personal jurisdiction over the Served Defendants, and venue does not lie here. And even if the Seattle procedure were the cause of Plaintiff's injury, this Court would still lack jurisdiction over OSTA.

### A. This Court lacks personal jurisdiction over the Served Defendants.

Federal due process prohibits a court from exercising jurisdiction over a defendant unless the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). In evaluating these contacts, courts recognize two kinds of personal jurisdiction: general (or all-purpose) jurisdiction, and specific (or case-linked) jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Where, as here, "there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800.

#### 1. Plaintiff does not allege general jurisdiction.

Plaintiff does not allege general jurisdiction here because she cannot. General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317); *see also BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 405–06 (2017) (due process "does not permit a State to hale an out-of-state corporation before its courts when the corporation is not 'at home' in the State and the episode-in-suit occurred elsewhere"). The paradigm forum for exercising general jurisdiction over a corporation is its "place of incorporation and its principal place of business." *Tyrrell*, 581 U.S. at 413.

There is no dispute that this Court lacks general jurisdiction over the Served Defendants. OCA and OAI are incorporated in New York and maintain their principal places of business in Pennsylvania. OSTA is headquartered in Massachusetts. *See*

Second Compl. ¶¶ 12–14.[2] And Plaintiff alleges no "continuous and systematic" affiliation that would render the Served Defendants "essentially at home" in Washington. *Goodyear*, 564 U.S. at 919. Its allegations pertain only to specific jurisdiction, *see* Second Compl. ¶¶ 37–40, which, as explained below, also do not suffice.

**2. This Court lacks specific jurisdiction.**

Specific jurisdiction cannot be exercised over the Served Defendants, because the First Complaint makes clear that Plaintiff's claims do not arise out of or relate to any of the Served Defendants' forum contacts. Specific jurisdiction over OSTA is independently improper because it has virtually no forum contacts, let alone any that are relevant to Plaintiff's claims.

**a. Plaintiff's claims do not arise out of or relate to the Served Defendants' Washington contacts.**

Specific jurisdiction cannot be exercised where, as here, Plaintiff cannot show "each defendant" has the requisite connection to the forum state and that her claims arise out of those connections. *Sher v. Johnson*, 911 F.2d 1357, 1365–66 (9th Cir. 1990).

Plaintiff's Second Complaint fails to meet this standard at the outset. The Complaint alleges personal jurisdiction against the eight named Defendants as a collective, rather than asserting personal jurisdiction as to each specific Defendant. This directly violates the requirement that a plaintiff demonstrate personal jurisdiction as to "each defendant." *Id.* ("jurisdiction over each defendant must be established individually," based on each defendant's "requisite minimum contacts with" the forum state). That alone warrants dismissal.

[2] While not alleged, OSTA is incorporated in Delaware. Declaration of Matthew Wynocker ("Wynocker Decl.") ¶ 7.

But even if Plaintiff's allegations were facially proper, Plaintiff's First Complaint makes clear that this Court still cannot exercise personal jurisdiction, because Plaintiff's claims do not "arise[] out of or relate[] to the" Served Defendants' "forum-related activities." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161–62 (9th Cir. 2023).[3]

In her First Complaint, Plaintiff expressly alleged that the cause of Decedent's infection and death was an endoscopy procedure in Illinois. Plaintiff alleged that Decedent showed signs of infection shortly after that May 15, 2023 Illinois procedure, and those signs were confirmed by lab results observed and recorded weeks before the second procedure in Washington. First Compl. (Ex. 1) ¶¶ 30–33. In other words, the Seattle procedure took place *after* physicians diagnosed Decedent's infection. Thus, by the First Complaint's own admissions, the Seattle procedure had no connection to Plaintiff's injury. *See id.* ¶ 3 (conceding that the relevant "ERCP procedure occurred in Illinois").

This Court "is not required to"—and should not—"turn a blind eye" to these "contradict[ory]" assertions." *Mohsen v. Morgan Stanley & Co., Inc.*, 2016 WL 9686985, at *4–5 (C.D. Cal. Mar. 24, 2016). Rather, it should consider the "competent evidence of the facts stated" in that First Complaint. *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996). Indeed, in assessing whether Plaintiff has adequately pled personal jurisdiction, this Court can consider materials outside the Second Complaint, including the "claims" and "underlying facts" alleged in a prior action,

[3] For a defendant's contacts with the forum state to meet the due process standard for the exercise of specific personal jurisdiction, (1) the non-resident defendant must purposefully avail himself of, or direct his activities at, the forum; (2) "the claim must be one that arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Id.*

such as Plaintiff's First Complaint. *LegalForce, Inc. v. Legalzoom.com, Inc.*, 2018 WL 6179319, at *4 (C.D. Cal. Nov. 27, 2018); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking "judicial notice" of plaintiffs' briefs to see what was "actually litigated"). Likewise, this Court "is not obligated 'to accept as true allegations raised in the complaint that are contradicted by prior proceedings of which judicial notice is properly taken.'" *Mohsen*, 2016 WL 9686985, at *4 (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Plaintiff's statements in the First Complaint are "competent evidence of the facts stated" in her Second Complaint. *Huey*, 82 F.3d at 333.

Thus, taking Plaintiff at her own averments in the First Complaint, her claim does not "arise[] out of or relate[] to" any Defendants' purported "forum-related activities" in Washington. *Davis*, 71 F.4th at 1161–62. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023), is instructive. There, although defendants had contacts with Hawaii, defendants' Hawaii contacts were not the "but-for" cause of Plaintiff's injuries, nor were his injuries "related to" those contacts, which "requires a close connection between contacts and injury." *Id.* at 504–07. The claims therefore did not "arise out of or relate to [any] forum contact." *Id.* at 508. So too here. The First Complaint is clear that the Seattle procedure was neither the "but-for" cause of, nor "close[ly] connect[ed]" to, Decedent's injury. *Id.* at 506–07.

In short, because there is no connection between this case and the Served Defendants' activities in Washington, this Court lacks personal jurisdiction over the Served Defendants, and they should be dismissed pursuant to Rule 12(b)(2).

**b. This Court lacks personal jurisdiction over OSTA for additional, independent reasons.**

Even if the Washington procedure were the cause of Plaintiff's injury, this Court would still lack personal jurisdiction over OSTA. OSTA does not sell or

distribute Olympus devices in the United States. Wynocker Decl. ¶ 7. Instead, it manufactures certain Olympus devices in Massachusetts,[4] while also servicing and repairing devices in California and Tennessee. *Id.* The Second Complaint does not allege that either of these activities caused or contributed to Decedent's injury. *See generally* Second Compl. ¶¶ 119–275. Thus, Plaintiff's attempt to hale OSTA into this Court must fail.

### B. Plaintiff should not be allowed to forum shop her Complaint; Venue is improper in the Western District of Washington.

Because venue is improper, and because Plaintiff's "filing in an improper forum evidences bad faith," her claims should be dismissed. *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 805–06 (9th Cir. 1991).

Venue is improper here because (1) the Served Defendants do not reside in this state or district; and (2) the events giving rise to the Second Complaint did not occur here. 28 U.S.C. § 1391(b)(1)–(2).[5] As discussed, Defendants are not residents of Washington, and no substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff's own averments make clear that the procedure that allegedly caused Decedent's injury took place in Illinois, not Washington. *See* First Compl. (Ex. 1) ¶ 3.

Importantly, Plaintiff knew all of this and, in a "thinly veiled attempt to forum shop," filed the Second Complaint in this Court anyway while removing all mention of the Illinois procedure. *Goldwater Bank, N.A. v. Elizarov*, 822 F. Supp. 3d 1105, 1113 (C.D. Cal. 2026). Such "forum shopping" is not only "loathsome" and "inapposite

---

[4] It does not, however, manufacture TJF-Q190V duodenoscopes. *Id.*

[5] For purposes of the first provision, a corporate defendant generally "resides" in a district where it is subject to personal jurisdiction with respect to the action. *Id.* § 1391(c)(2).

to the pursuit of a fair and impartial proceeding, but [also] amounts to an inappropriate abuse of the judicial process." *Id.* "[D]ismissal," in turn, "is proper where filing in an improper forum evidences bad faith." *In re Hall*, 939 F.2d at 805–06; *see* 28 U.S.C. § 1406(a). Plaintiff told this Court that this case belongs in Illinois based on allegations that Illinois is where the injury occurred; she then dismissed her case, refiled in Washington, and omitted any mention of the Illinois procedure. Given that overt gamesmanship, dismissal is the most appropriate and just option. *See In re Hall,* 939 F.2d at 805–06.

## II. Plaintiff fails to plead viable claims for relief.

Even if personal jurisdiction and venue were proper, the Second Complaint still should be dismissed based on several shortcomings, including because: (i) Plaintiff's group-pleading, in which she fails to identify the conduct of any specific defendant, does not suffice; (ii) Plaintiff's fraud-based claims are not pled with the particularity required by Federal Rule 9(b); (iii) Plaintiff has not pled any actionable express warranty, (iv) many of Plaintiff's common law claims are subsumed by the WPLA, and (v) Plaintiff has not adequately alleged a manufacturing defect.

### A. Plaintiff impermissibly lumps all Defendants together in a shotgun pleading.

Rule 8 does not allow a Plaintiff to "assert[] multiple claims against multiple defendants without identifying who did what." *Gibson v. City of Portland*, 165 F.4th 1265, 1291 (9th Cir. 2026); *see also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("as a matter of normal pleading standards," a "complaint based on a theory of collective responsibility must be dismissed"). That form of "[s]hotgun pleading undermines a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims" against them. *Gibson*, 165 F.4th at 1290.

In *Gibson*, the complaint repeatedly referred to "Defendants" as a collective "without identifying which defendants [we]re responsible for" the alleged violations. *Id.* at 1293–95. The Ninth Circuit held that by "lump[ing] all Defendants together" in its allegations, the complaint improperly deprived defendants of the requisite notice of the claims against them, and thus warranted dismissal. *Id.* at 1287; *see id.* at 1294 ("How is a defendant or a court to assess a plaintiff's allegations if we do not know who did what[?]").

The Second Complaint is no better. Each claim is based on allegations against all eight named Defendants as a collective. The Second Complaint does not clarify which allegations, if any, are attributable specifically to each Served Defendant. As such, none of the Defendants has any way of "know[ing] who" allegedly "did what." *Gibson*, 165 F.4th at 1294. That defect warrants dismissal. *Id.* at 1287.

It is immaterial that OCA, OAI, and OSTA are part of the same corporate umbrella. "Courts adhere to the fundamental principle that corporations, including parent companies and their subsidiaries, are treated as distinct entities." *Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 636 (9th Cir. 2021). Although the Second Complaint cursorily asserts that Olympus Corporation, as the parent company, "exercised and exercises dominion and control over" its subsidiaries, Second Compl. ¶¶ 21–22, and that each Defendant "was the agent and employee of the other," *id.* ¶ 23, a "conclusory legal statement unsupported by any factual assertion regarding [a parent's] control" or "any other aspect[s] of the parent-subsidiary relationship" cannot be credited. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017).

**B. Plaintiff's fraud-based claims do not comport with Rule 9(b).**

Plaintiff's claims sounding in fraud (Counts 10–12) independently do not meet federal pleading requirements. Rule 9(b) mandates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud

or mistake." This Rule ensures that "the circumstances constituting the alleged fraud [are] specific enough to give defendants notice of the particular misconduct." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). To meet this requirement, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Plaintiff's claim for fraud and fraudulent misrepresentation (Count 11) fails to meet this standard. The claim rests on vague assertions that "Defendants" made "fraudulent[] represent[ions]" regarding the device at issue. *E.g.*, Second Compl. ¶ 223. As noted, that generalized allegation against the eight Defendants as a collective does not comport with Rule 8, let alone Rule 9's heightened standard. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (plaintiff cannot "lump multiple defendants together" under Rule 9). The Complaint also fails to allege "when, where, and how" these alleged misrepresentations were made. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–07 (9th Cir. 2003) (citation omitted); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (dismissing fraud claim "for failure to state with particularity who made the fraudulent statement, when the fraudulent statement was made, and how the fraudulent statement was made") (cleaned up)). Plaintiff's fraud claim is thus inadequate on its face.

The fraudulent concealment claim (Count 12) fares no better. "[A] plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013); *see also 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999) (same). Like Count 11, this claim fails to allege "the role of each Defendant

in the concealment." *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1164 (S.D. Cal. 2015). And the Complaint provides virtually no information regarding the "time frame for the concealment" or any "description of the circumstances surrounding the concealment," as Rule 9(b) mandates. *Zetz v. Boston Sci. Corp.*, 398 F. Supp. 3d 700, 714 n.5 (E.D. Cal. 2019).

Plaintiff's negligent misrepresentation claim (Count 10) fails for the same reasons. Where a "claim is said to be grounded in fraud or to sound in fraud," even if it is not labeled accordingly, "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103–04 (cleaned up). That rule applies to "negligent misrepresentation claim[s]" that "allege[] that the defendant engaged in fraudulent conduct." *See Velicer v. Falconhead Cap., LLC*, 2020 WL 1182962, at *7 (W.D. Wash. Mar. 11, 2020) (quotation omitted).

Here, Plaintiff's negligent misrepresentation claim alleges the same "unified course of fraudulent conduct" as the fraud claims. *Vess*, 317 F.3d at 1103. Like Plaintiff's fraud claims, her negligent misrepresentation claim alleges that "Defendants made misrepresentations to Decedent, Decedent's health care providers, and the general public," Second Compl. ¶¶ 209, 212, and did so with "the intention of inducing reliance and the ultimate usage of the Endoscope Device on Decedent and other patients," *id.* ¶ 215. As such, the negligent misrepresentation claim is subject to Rule 9(b). It does not meet that standard—it does not specify which Defendant made the alleged misrepresentations, nor does it detail "when, where, and how" the alleged misrepresentations were made. *Vess*, 317 F.3d at 1106–07. Without these details, the negligent misrepresentation claim fails.

### C. Plaintiff has not identified a specific express warranty.

Plaintiff's express warranty claim (Count 7), brought pursuant to § 7.72.030(2)(b) of the WPLA, likewise fails. To state a claim for express warranty, a

plaintiff must identify the specific warranty at issue. *See Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1226 (W.D. Wash. 2012); *see also Doyle v. Bayer Corp.*, 2025 WL 1666261, at *4 (W.D. Wash. June 12, 2025); *see also Bd. of Educ of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 595 (Ill. 1989) ("express warranty must be stated or attached to the complaint . . . and failure to do so renders the claim invalid" (citations omitted)).

The Complaint does not meet this requirement. It alleges that "Defendants warranted . . . that their Endoscope Device was safe," Second Compl. ¶ 195, but does not identify any specific express warranty that Defendants contravened. A plaintiff fails to state an express warranty claim when he relies merely on "conclusory allegations" and "fail[s] to specify what specific representations or warranties were made, when or where, or how they relied on them." *Doyle*, 2025 WL 1666261, at *4; *see also Stockwell v. Sumitomo Pharma Am., Inc.*, 2026 WL 791614, at *6 (W.D. Wash. Mar. 20, 2026) (dismissing express warranty claim because plaintiff "ma[de] no allegations regarding any specific warranty made by [the defendant], much less any 'material fact' related to that warranty"). Plaintiff's failure to point to any actual warranty—much less "when or where, or how [she] relied on" that warranty—compels dismissal of the express warranty claim. *Doyle*, 2025 WL 1666261, at *4.

### D. Plaintiff's statutory claims subsume her common law claims under Washington law.

Assuming *arguendo* Washington law applies, *see generally* Second Compl., (asserting claims under Washington law),[6] many of Plaintiff's common law claims are improper. The WPLA "supplants all common law claims or actions based on harm caused by a product," *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1073 (Wash. 2012), with only a narrow exception for "fraud" and "intentionally caused

[6] Defendants reserve all rights as to the law applicable to all claims and issues.

harm," RCW § 7.72.010. Therefore, Plaintiff's claims for negligence (Count 4), gross negligence (Count 5), and negligent infliction of emotional distress (Count 8), are supplanted by the WPLA and should be dismissed.[7]

**E. Plaintiff fails to state a manufacturing defect claim.**

Plaintiff's manufacturing defect claim (Count 3) likewise fails under Washington law. Under the WPLA, a manufacturing defect requires a "material" deviation from the manufacturer's specifications, performance standards, or otherwise identical units when the product left the manufacturer's control. RCW § 7.72.030(2)(a). The Second Complaint merely parrots that standard, alleging that the duodenoscope "deviated materially from Defendants' manufacturing and/or design specifications and thus posed unreasonable risks of serious bodily harm." Second Compl. ¶ 158. It does not explain ***how*** the device deviated from Olympus's specifications, performance standards, or otherwise identical units on the product line. Courts routinely dismiss manufacturing defect claims for exactly this shortcoming. *E.g.*, *Doyle*, 2025 WL 1666261, at *4; *Stockwell*, 2026 WL 791614, at *3.

## III. This Court should otherwise transfer this case to the Northern District of Illinois.

In the alternative, the Court should transfer this case to the Northern District of Illinois. As Plaintiff has told this Court in both the First Complaint and the Joint Motion to Transfer, venue in the Northern District of Illinois is not only proper—it is the most appropriate venue for the convenience of the parties and witnesses and in the interest of justice. That remains the case today. Judicial estoppel forecloses Plaintiff's attempt to renege on that admission.

---

[7] If the Court disagrees with Defendants that Plaintiff's negligent misrepresentation claim (Count 10) sounds in fraud, *supra* § II.B, it too is subsumed by the WPLA and should be dismissed.

### A. Jurisdiction and venue are proper in the Northern District of Illinois.

"To effect a transfer, the transferee court must have subject matter jurisdiction and be a proper venue for the action," and the "defendant[] must be subject to personal jurisdiction in the district, and be amenable to service of process there." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 760 (C.D. Cal. 2016). Here, the Northern District of Illinois satisfies both of these requirements.

First, the Northern District of Illinois can exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Second Compl. ¶¶ 12–19, 36 (alleging diversity jurisdiction).

Second, the Northern District of Illinois can exercise specific personal jurisdiction where the lawsuit arises directly out of or relates to the defendant's purposeful contacts with Illinois. *See Davis*, 71 F.4th at 1161–62; *see also Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). As discussed above, in the First Complaint, Plaintiff expressly alleged that Decedent's infection and death were caused by an endoscopy procedure that took place in Illinois. *See* First Compl. (Ex. 1) ¶ 3; *see also id.* ¶¶ 28–33 (alleging that Decedent had the infection before arriving at the Washington hospital). This Court can take judicial notice of the existence of these allegations, *see Reyn's*, 442 F.3d at 746 n.6; *Mohsen*, 2016 WL 9686985, at *4, which show that the Northern District of Illinois is an appropriate jurisdiction and venue, *see also Honeywell, Inc.*, 82 F.3d at 333 (allegations in prior, superseded complaint can be "competent evidence"). The Served Defendants are therefore subject to personal jurisdiction in the Northern District of Illinois for these allegations, and they are amenable to service in Illinois, where they transacted business and sold and supplied endoscopic devices, *see* Wynocker Decl. ¶ 5, including the device allegedly used in the decedent's Chicago procedure. *See Davis,* 71 F.4th at 1161–62.

Third, the Northern District of Illinois is likewise the proper venue because "a substantial part of the events or omissions giving rise to [Plaintiff's] claim[s] occurred" in the Northern District of Illinois, 28 U.S.C. § 1391(b)(2), notwithstanding Plaintiff's obvious efforts to plead around those events in the Second Complaint. The procedural history of the first action reinforces the point. Plaintiff told this Court that the action should be transferred to the Northern District of Illinois, and this Court agreed. Illinois was an appropriate venue then, and it remains appropriate now.

**B. Transfer is warranted for the convenience of the parties and witnesses and in the interest of justice.**

Plaintiff was correct to tell this Court in September 2025 that transfer to the Northern District of Illinois was warranted for the sake of convenience and justice. Courts consider various "private and public interest factors to determine convenience and the interests of justice" under § 1404(a). *Travelers Prop. Cas. Co. of Am. v. Expeditors Int'l of Wash.*, 626 F. Supp. 3d 1193, 1199 (W.D. Wash. 2022) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)). To that end, the Ninth Circuit has set forth a non-exclusive list of factors. *See Jones*, 211 F.3d at 498–99. But it has also emphasized that this analysis is flexible—courts should adjudicate each motion to transfer on "an individualized, case-by-case" basis. *Id.* at 498 (citation omitted). Here, the applicable § 1404(a) factors decisively favor transfer.

<u>Contacts relating to Plaintiff's cause of action in the chosen forum</u>. To assess a forum's contacts relating to the plaintiff's cause of action, courts consider where "the operative facts occurred." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1079 (S.D. Cal. 2011); *see Hansen v. Combined Transp.*, 2013 WL 5969863, *3 (W.D. Wash. Nov. 7, 2013) (Lasnik, J.) (noting a "plaintiff's choice of forum is given much less weight when the forum lacks any significant contact with the activities alleged"); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (similar).

As Plaintiff's averments make clear, the Northern District of Illinois is the proper forum because:

- Chicago is where Decedent allegedly contracted the VRE infection. First Compl. (Ex. 1) ¶¶ 3, 24–35.
- Decedent showed signs of infections shortly after that Chicago procedure. *Id.* ¶¶ 28–30.
- The infection following that Chicago procedure was confirmed before his second ERCP in Washington. *Id.* ¶¶ 31–33.

Thus, the "allegedly wrongful conduct" at the heart of Plaintiff's case occurred primarily in Illinois. *Adachi v. Carlyle/Galaxy San Pedro, L.P.*, 595 F. Supp. 2d 1147, 1152 (S.D. Cal. 2009) (transferring venue to district where relevant alleged misconduct occurred). Accordingly, critical elements of Plaintiff's claims and the Served Defendants' defenses will turn on facts that took place in Illinois. The critical importance of Illinois to this lawsuit decisively favors transfer.

<u>Ease of access to sources of proof</u>. As courts in this Circuit have explained, transfer to the site of most of the witnesses and documentary evidence is favored because it enhances ease of access and creates efficiencies and convenience for the parties. *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013); *Hansen*, 2013 WL 5969863, at *4. Indeed, overall "costs of litigation can . . . be substantially lessened" if the venue is in the district in which most of the evidence is located. *Park*, 964 F. Supp. 2d at 1095.

Here, most sources of proof lie in Illinois. The Illinois procedure and Northwestern Hospital remain a centerpiece of this case. As such, all of the evidence regarding this procedure will be in Illinois, including:

- Information about the hospital where the decedent contracted VRE;

- Information about the subject device used in the Chicago procedure that allegedly led to his VRE infection;
- Information about decedent's condition and treatment in Illinois, including documents from the hospital in Chicago and witness testimony from doctors, nurses, and surgical technicians who work in Illinois and reside near Chicago;
- Testimony from the Olympus employees who sold and serviced the duodenoscope, as well as the hospital staff trained in the reprocessing and use of the device, all of whom will live in or around Chicago.

Litigating in Chicago will ensure that the parties have easy access to this evidence, increasing convenience for both sides. *See id.*; *accord InMode Ltd v. BTL Inds., Inc.*, 756 F. Supp. 3d 809, 820 (C.D. Cal. 2024) (transferring to district where evidence and key witnesses were located).

<u>Availability of compulsory process and witness convenience</u>. Transfer is also favored where "key fact witnesses . . . reside within [the transferee] district," such that the district "will have subpoena power over the witnesses" to compel them to testify live at trial. *Rubio*, 181 F. Supp. 3d at 763 (citation omitted); *see* Fed. R. Civ. P. 45(c)(1). And transfer would be far more convenient for the key witnesses themselves—a critical aspect of § 1404(a). Indeed, transfer is "heavily . . . favor[ed]" when "the most important non-party fact witnesses are located in" the transferee district. *Rubio*, 181 F. Supp. 3d at 764; *see also Hansen*, 2013 WL 5969863, at *4 (granting transfer where "principal witnesses are in [transferee district]"); *Cendant Corp.*, 404 F. Supp. 2d at 1260–61 (likelihood that key expert witnesses were in Delaware favored transfer).

The Served Defendants intend to call, at trial, the physicians and practitioners who performed or were involved in the Illinois procedure, the hospital employees who

cared for and came into contact with Decedent, the hospital employees who cleaned and disinfected the duodenoscope used in Decedent's Illinois procedure, and the hospital's infection prevention personnel, all of whom are presumably located in or near the Northern District of Illinois. Declaration of Attorney Michael Scoville ("Scoville Decl.") ¶¶ 9-10. Further, the local Olympus employees who sold the duodenoscope and interact with the hospital regarding its endoscopes are also in or near the Northern District of Illinois. *Id.* ¶ 9; Wynocker Decl ¶ 5.

These witnesses will address critical issues like the reason for Decedent's ERCP procedure; potential avenues for bacterial transmission in the hospital; the hospital's infection prevention processes; precautions taken at the hospital; the identity of, and reasons for, the devices used in Decedent's procedure; cleaning and high-level disinfection procedures used on the duodenoscope; other procedures Decedent underwent; any complications that occurred during the procedure; informed consent discussions held with Decedent prior to his procedure; and the potential cause(s) of Decedent's infection. Scoville Decl. ¶ 11. Transferring to the Northern District of Illinois will ensure that the nonparty witnesses fall under the Court's subpoena power to compel their testimony at trial. *See Rubio*, 181 F. Supp. 3d at 763. And because most of these witnesses will live and/or practice in Illinois, litigating this case there would be significantly more convenient for them. *See id.* at 764.

<u>Plaintiff's choice of forum</u>. There can be no deference to plaintiff's forum where she has forum-shopped this Court. *See Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 695 (9th Cir. 2009). Moreover, this Court need not defer to plaintiff's forum where plaintiff has already *agreed* to litigate somewhere else, only to later change her mind. *See Glaxo Grp. Ltd. v. Genentech, Inc.*, 2010 WL 1445666, at *4 (N.D. Cal.

Apr. 12, 2010) (no deference where district was "not [the plaintiff's] first choice of forum").

Other *Jones* factors. None of the other *Jones* factors change the analysis. That includes the respective parties' contacts with the chosen forum, the state most familiar with the governing law, and the differences in the costs of the litigation. 211 F.3d at 498–99.

To start, the parties' most critical contact with either forum is (as discussed) the first procedure that Decedent underwent in Illinois. That is, after all, where Decedent allegedly became infected. And neither Illinois nor Washington encompasses the Served Defendants' principal places of business or places of incorporation. Compl. ¶¶ 12–14. The fact that Plaintiff and Decedent resided in Washington is not dispositive. *E.g., Hansen*, 2013 WL 5969863, at *2, *5 (granting transfer to Oregon from Washington even though plaintiff resided in Washington).

Familiarity with the governing law also weighs in favor of transfer. Given that the relevant procedure occurred in Illinois, under the most significant relationship test, Illinois law should apply to Plaintiff's claims. *See Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 n.1 (9th Cir. 1996) (applying Washington's "most significant relationship" test). Even if the Court were to determine Washington law applied to some of Plaintiff's claims, "federal judges routinely apply the law of other states than the one in which they sit." *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1136 (N.D. Cal. 2019). Therefore, this factor favors transfer, or at worst, "this factor is neutral." *Id.*

Nor do the costs of litigation favor Washington. As outlined above, much of the discovery will focus on Illinois. Therefore, *both* parties will save costs if this case proceeds in Illinois because the key fact witnesses and documents reside there. *See Park*, 964 F. Supp. 2d at 1095. Thus, this factor also favors Illinois.

<u>Other considerations in the interest of justice</u>. The enumerated *Jones* factors are non-exclusive. This Court can consider other factors as part of its "individualized" analysis of whether transfer is warranted. *Jones*, 211 F.3d at 498. Here, Plaintiff's obvious gamesmanship not only warrants transfer under the doctrine of judicial estoppel, *see* Section III.C, *supra*—it also strongly favors it under a traditional § 1404(a) analysis.

Despite previously telling this Court that Illinois is the proper forum for this dispute, Plaintiff dismissed the original case, refiled in Washington, and omitted any mention of the Illinois procedure. Such "forum shopping" is both "inapposite to the pursuit of a fair and impartial proceeding" and "an inappropriate abuse of the judicial process." *Elizarov*, 822 F. Supp. 3d at 1113.

Indeed, if successful, Plaintiff's forum-shopping will directly harm the Served Defendants. For example, it would deprive them of ready access to critical medical records, and to the doctors and other healthcare professionals who treated Decedent in Illinois. Proceeding in Washington, moreover, would undermine the "systemic integrity" of the judicial system by allowing Plaintiff to engage in overt gamesmanship and sidestep her own judicially-adopted agreement to litigate this case in Illinois. *Stewart Org.*, 487 U.S. at 30. These additional, critically important factors favor transfer.

**C. The doctrine of judicial estoppel bars Plaintiff from arguing otherwise.**

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation omitted). It is appropriate to enforce estoppel when (1) a party's later position is clearly inconsistent with its earlier position, (2) a court accepted the party's earlier position, and (3) the

party asserting an inconsistent position would achieve an unfair advantage or cause the other party unfair detriment. *Id.* at 750–51. All three are true here.

Inconsistent Position: Plaintiff told this Court that the First Complaint should proceed in Illinois "for the convenience of the parties and witnesses and in the interest of justice." Joint Stipulation, *Bruto da Costa*, No. 2:25-cv-00903 (Dkt. 12) (Ex. 2). And Plaintiff's averments to this Court asserted that the relevant procedure occurred in Illinois, citing specific medical records. Now, Plaintiff backtracks and asserts that venue should lie in Washington. And she does so by ignoring her previous statements and agreement. Those positions are plainly contradictory. Having recognized that Illinois is the right venue for this case, Plaintiff cannot now assert that the case should proceed in Washington.

Judicial Acceptance: This Court accepted and relied on Plaintiff's position that this case belongs in Illinois when it granted the parties' joint motion and ordered, for "good cause shown," that the case should be transferred to Illinois. *See* Order (Dkt. 18) (2:25-cv-00903) (Ex. 3). Indeed, the Ninth Circuit has explained that judicial estoppel can arise from stipulations between parties. *E.g.*, *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's*, 139 F.3d 1234, 1239 (9th Cir. 1998) (applying judicial estoppel to bar defendants from asserting an argument contradicted by a factual stipulation in the parties' proposed pretrial order).

Unfair Advantage or Detriment: Allowing Plaintiff to litigate in Washington would "impose an unfair detriment" on the Served Defendants. *Maine*, 532 U.S. at 751. Plaintiff's back-and-forth forum shopping is an obvious attempt to deprive both Defendants of the forum that Plaintiff already agreed and represented to this Court would be more convenient and would promote justice. And as discussed, Plaintiff's

attempt to renege on the stipulated § 1404(a) transfer would deprive Olympus of ready access to critical evidence that may prove dispositive. *See supra* § II.B.[8]

Courts have applied judicial estoppel in similar circumstances. In *Fellores v. Winter*, 2007 WL 473727 (E.D. Va. Feb. 8, 2007), for example, the plaintiff "initially consented to a transfer of venue" from the Southern District of California to the Eastern District of Virginia. *Id.* at *2. After transfer, the plaintiff "state[d] that th[e] case should be transferred back to the Southern District of California or to the District Court of Guam." *Id.* The court refused. *Id.* Because Plaintiff was "arguing a position with respect to venue that is clearly inconsistent with a position he earlier stipulated to," he was "judicially estopped from arguing that th[e] case" belonged in a district other than the Eastern District of Virginia. *Id.* Other courts have similarly invoked judicial estoppel to prevent a party from altering its position on venue. *E.g.*, *Sanact, Inc. v. US Pipelining LLC*, 2018 WL 3213612, at *5 (D. Haw. June 29, 2018). Here too, judicial estoppel applies.

In short, because (1) Plaintiff is now taking a position that is clearly inconsistent with the First Complaint, (2) the Court accepted Plaintiff's earlier position, and (3) Plaintiff's inconsistent position would unfairly advantage Plaintiff

---

[8] The about-face will irreparably prejudice OSTA for an additional reason. While the Served Defendants do not concede any statute-of-limitations defenses, Plaintiff's decision to file in Washington unfairly prejudiced those statute of limitations defenses, at least with respect to OSTA, which was not a defendant in the prior action. *E.g.*, 735 Ill. Comp. Stat. 5/13-202 (2-year general personal injury statute of limitations); *id.* 5/13-213 (2-year product liability statute of limitation); 740 Ill. Comp. Stat. 180/2 (2-year wrongful death statute of limitation). Although Plaintiff may have re-filed in Illinois and relied on Illinois's one-year savings statute, 735 Ill. Comp. Stat. 5/13-217, courts in Illinois have held that "[a] plaintiff may not use the [Illinois] savings statute to add new parties to the complaint." *Fraser v. Rodriguez-Espinoza*, 2014 WL 4783095, at *5 (N.D. Ill. Sep. 24, 2014). By instead filing in Washington with new Washington-focused factual allegations, Plaintiff appears to be attempting to sidestep that statute-of-limitations defense and take advantage of Washington's three-year limitations period, *see* RCW §§ 4.16.080(2), 7.72.060(3). Thus, Plaintiff seeks to force OSTA to defend against claims that should be time-barred under applicable law.

to the Served Defendants' detriment, Plaintiff should be judicially estopped from opposing transfer.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the case against the Served Defendants or, in the alternative, transfer it to the Northern District of Illinois.

Undersigned counsel certifies that this memorandum contains 8,224 words, in compliance with Local Civil Rule 7(e)(4).

Dated: October 19, 2026

By: /s/ *Michael Scoville*

Michael Scoville, WSBA No. 44913
**McGuireWoods LLP**
1001 Fourth Avenue, Suite 4368
Seattle, Washington 98154
Telephone: +1.206.336.5000
Facsimile: +1.206.336.5010
MScoville@mcguirewoods.com

Davis Walsh (*pro hac vice* forthcoming)
**McGuireWoods LLP**
800 E. Canal St.
Richmond, Virginia 23219
Telephone: +1.804.775.7791
Facsimile: +1.804.698.4673
DWalsh@mcguirewoods.com

Morgan Branch (*pro hac vice* forthcoming)
Daniel A. Spira (*pro hac vice* forthcoming)
**Sidley Austin LLP**
One South Dearborn St.
Chicago, Illinois 60603
Telephone: +1.312-853-7000
Facsimile: +1.312.7036
mbranch@sidley.com
dspira@sidley.com

*Specially Appearing for Olympus America Inc., Olympus Corporation of the Americas, and Olympus Surgical Technologies America*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on October 19, 2026, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: October 19, 2026

*/s/ Michael Scoville*
Michael Scoville