# Exhibit 1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| **MICHELLE BRUTO DA COSTA, individually and as personal representative of the Estate of MARK BRUTO DA COSTA, deceased**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**OLYMPUS AMERICA INC., OLYMPUS CORPORATION OF THE AMERICAS, OLYMPUS MEDICAL SYSTEMS CORPORATION, Defendants.** | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES** |

**COMES NOW** Plaintiff Michelle Bruto da Costa, in her individual capacity and as the personal representative of the Estate of Mark Bruto da Costa, by and through her undersigned counsel of record, and alleges against Defendants, and each of them jointly and severally, as follows: Defendants owed Plaintiff and the Decedent a duty of care; they breached that duty through negligent, reckless, and unlawful conduct; and as a direct and proximate result, Plaintiff suffered substantial damages as alleged herein below.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

## I. INTRODUCTION

This wrongful death and product liability action arises from the preventable death of Mark Bruto da Costa, a 44-year-old husband and father of five, following an endoscopic retrograde cholangiopancreatography (ERCP) procedure using an Olympus TJF-Q190V duodenoscope. This case is among the first post-injury lawsuits involving Olympus's TJF-Q190V duodenoscope following its July 2023 FDA Class II recall. Unlike prior litigation from 2015–2017 involving the Q180V predecessor, this case centers on a device already linked to multiple contamination events and under active regulatory scrutiny before it was used on Mr. Bruto da Costa. Olympus had marketed the Q190V as a safer successor, yet federal records and internal reports revealed ongoing design and reprocessing failures.

By January 2023, Olympus had received clusters of adverse event reports involving cracked distal caps on the Q190V, contributing to mucosal trauma. By March, the company's own internal review had flagged at least 98 product complaints, prompting the FDA to issue a warning letter criticizing Olympus for failing to investigate or act. In May 2023, just before Mr. Bruto da Costa's procedure, a lodged stent was discovered in a Q190V duodenoscope after four patient uses—demonstrating a serious reprocessing failure. Olympus did not issue a recall or safety alert before Mr. Bruto Da Costa's procedure.

Mr. Bruto Da Costa began showing signs of infection within 36 hours of the ERCP. He was later diagnosed with vancomycin-resistant Enterococcus (VRE) bacteremia, a life-threatening "superbug" associated with contaminated duodenoscopes. Despite multiple hospitalizations and a second ERCP to manage complications, he died six weeks later of septic shock and multi-organ



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

failure. Within weeks of his death, the FDA formally recalled the TJF-Q190V duodenoscope due to reports of infections and microbial contamination.

Despite a 2016 agreement with the U.S. Department of Justice, in which Olympus Corporation of the Americas paid $646 million to resolve kickback, fraud, and foreign bribery allegations, the company failed to meaningfully reform its safety and compliance practices. That landmark settlement required Olympus to overhaul its internal oversight and operate under a corporate integrity agreement. Yet, in the years that followed, Olympus continued to market and distribute contaminated and poorly monitored devices like the TJF-Q190V. The same systemic failures—weak post-market surveillance, lack of transparency, and disregard for patient safety—remained intact in 2023 when Mr. Bruto da Costa underwent his fatal procedure.

While Olympus has avoided meaningful litigation in recent years, the risks posed by its duodenoscope product line have persisted without public scrutiny. This case—brought shortly after a federal recall and supported by a medically documented infection timeline—raises critical questions about Olympus's ongoing safety oversight, regulatory accountability, and its obligations to the patients and providers who relied on its assurances.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff Michelle Bruto da Costa is a resident of Washington State. Defendant Olympus America Inc. is a Delaware corporation with its principal place of business in Center Valley, Pennsylvania. Defendant Olympus Corporation of the Americas is also a Delaware corporation headquartered in Center Valley, Pennsylvania. Defendant Olympus Medical Systems Corporation is a Japanese corporation headquartered in Tokyo, Japan. The amount in



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

controversy exceeds $75,000. See *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435; *Hunter v. Philip Morris USA*, 582 F.3d 1039; *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089.

2. Defendant Olympus America Inc. is a foreign profit corporation registered to do business in the State of Washington under UBI Number 601045231. Its registration has been active since December 13, 2007, and remains in good standing through at least December 31, 2025. Olympus America Inc. maintains a registered agent in Tumwater, Washington—The Prentice-Hall Corporation System, Inc.—located at 300 Deschutes Way SW, Suite 208. Through its active corporate registration and presence of an authorized agent, Olympus America Inc. purposefully avails itself of the privileges and protections of Washington law and is subject to personal jurisdiction in this state.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District. Although the ERCP procedure occurred in Illinois, Plaintiff and decedent resided in Washington; the decedent's post-procedure symptoms, treatment, and decline occurred predominantly in Washington. Furthermore, Olympus and its affiliates directed defective warnings, regulatory omissions, and negligent design decisions from Pennsylvania and Japan, with foreseeable consequences in Washington. See *Myers v. Bennett Law Offices*, 238 F.3d 1068; *Etalco, Inc. v. AMK Indus. (In re Etalco, Inc.)*, 273 B.R. 211.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

## III. PARTIES

4. Plaintiff Michelle Bruto da Costa is the surviving spouse and personal representative of the Estate of Mark Bruto da Costa. She resides in Woodway, Snohomish County, Washington.

5. Defendant **Olympus America Inc.** is a Delaware corporation with its principal place of business at 3500 Corporate Parkway, Center Valley, Pennsylvania. It is the U.S. operating subsidiary of Olympus Corporation and is responsible for the distribution, sales, service, and support of Olympus medical devices—including the TJF-Q190V duodenoscope—in the United States. It interacts directly with hospitals and clinicians nationwide, including those in Washington, and is responsible for issuing or failing to issue safety communications and field guidance.

6. Defendant **Olympus Corporation of the Americas** is a Delaware corporation with its principal office also located in Center Valley, Pennsylvania. It acts as the regional oversight body for Olympus entities in North and South America. It directed regulatory strategy, coordinated risk management, and oversaw communications regarding Olympus medical devices across the United States. Upon information and belief, it had knowledge of adverse events and failed to intervene or disclose emerging risks associated with the TJF-Q190V.

7. Defendant **Olympus Medical Systems Corporation** is a Japanese corporation headquartered in Tokyo, Japan. It designed and manufactured the TJF-Q190V duodenoscope, including all relevant reprocessing instructions and risk disclosures. It placed these devices into U.S. commerce with the expectation they would be used in hospitals such as those in Washington.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

8. Defendants are jointly and severely liable to the Plaintiff. Upon information and belief, Defendants Olympus America Inc., Olympus Corporation of the Americas, and Olympus Medical Systems Corporation acted in concert as agents, partners, and/or joint venturers in the design, manufacture, marketing, and distribution of the Olympus TJF-Q190V duodenoscope in the United States.[1]

9. These Defendants jointly oversaw product specifications, labeling, risk warnings, and post-market surveillance. They shared common infrastructure, decision-making authority, and profit interests, and each acted as the agent of the others with respect to the TJF-Q190V's design, promotion, and field deployment.

10. At all relevant times, each Defendant knew or should have known of material contamination risks associated with the TJF-Q190V, yet failed to act. Their combined failure to recall, redesign, or properly warn directly contributed to the injury and death of Mark Bruto da Costa.

[1] U.S. Food & Drug Admin., Letter to Sheri Musgnung, Regulatory Affairs Manager, Olympus Corp. of the Americas, Re: K193182 – Evis Exera III Duodenovideoscope Olympus TJF-Q190V (Jan. 17, 2020), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm [https://perma.cc/3QFZ-27RZ].



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

## IV. FACTUAL BACKGROUND

**Unless otherwise stated, the following allegations are made upon information and belief and are likely to have evidentiary support after a reasonable opportunity for discovery.**

**A. Olympus's History of Design Defects and Recalls**

11. Olympus Corporation and its affiliates are the leading global manufacturer of gastrointestinal endoscopes, including duodenoscopes used in endoscopic retrograde cholangiopancreatography (ERCP) procedures. These scopes have been at the center of multiple infection outbreaks and legal actions for more than a decade due to contamination risks that arise despite standard sterilization.

12. In 2017, Olympus was ordered to pay $6.6 million in damages related to superbug outbreaks linked to its TJF-Q180V duodenoscopes. In 2018, the company faced another trial over similar allegations. These outbreaks were linked to multi-drug-resistant organisms (MDROs), including carbapenem-resistant Enterobacteriaceae (CRE), due to cleaning and design flaws that allowed biological material to remain trapped in the scopes after reprocessing.[2]

13. In 2023, Olympus's safety record continued to come under scrutiny. The FDA issued a Class II recall for Olympus laser-compatible bronchoscopes due to risks of patient burns and endobronchial combustion. This action reaffirmed ongoing concerns about Olympus's internal quality controls and post-market surveillance.[3]

---

[2] Christie Nicholson, Olympus Scopes Lawsuits, FindLaw (Nov. 30, 2023), https://www.findlaw.com/injury/product-liability/olympus-scopes-lawsuits.html [https://perma.cc/6X2V-BQPH].
[3] U.S. Food & Drug Admin., *Olympus Corporation of the Americas Recalls Bronchofiberscopes and Bronchovideoscopes Because They Can Lead to Burns and Fire*, FDA (Oct. 12, 2023), https://www.fda.gov/medical-devices/medical-device-



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

14. The Olympus TJF-Q190V duodenoscope is a successor to the TJF-Q180V and was marketed as a safer, reprocessing endoscope. Olympus introduced a removable distal endcap in the Q190V series to allow better visual access and cleaning of internal components. While this feature addressed some prior issues, emerging post-market reports and internal Olympus documents show that the Q190V did not fully eliminate infection risk.

15. Both the TJF-Q180V and Q190V share essential design characteristics: a side-viewing camera, an elevator mechanism at the distal tip, and internal working channels—features that, while useful clinically, make full reprocessing difficult and infection transmission possible even when manufacturer protocols are followed.

16. In February 2021, Olympus issued an Urgent Device Correction after mucosal tissue was found trapped in the Q190V's single-use distal cover, highlighting continued reprocessing complications. In July 2023, Olympus issued a Class II recall for the TJF-Q190V following reports of patient infections and positive cultures, citing the need for stricter adherence to reprocessing instructions and manual updates.[4]

17. In 2016, Olympus Corporation of the Americas paid $646 million to resolve allegations of Anti-Kickback Statute violations and Foreign Corrupt Practices Act violations in the U.S. and Latin America. This record-setting settlement detailed years of Olympus offering financial incentives, free equipment, and foreign travel to influence medical purchasing decisions while failing to maintain adequate corporate compliance systems.

recalls/olympus-corporation-americas-recalls-bronchofiberscopes-and-bronchovideoscopes-because-they-can-lead-burns-and-fire [https://perma.cc/7B2M-3U3G].

[4] U.S. Food & Drug Admin., *Class 2 Device Recall: Olympus Single Use Distal Cover MAJ-2315* (Feb. 9, 2024), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=205324 [https://perma.cc/Q8WA-G6WX].



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

18. Further, in 2024, Olympus's former Global Head of Product Development, Paul Lisenby, filed a federal whistleblower lawsuit—alleging that the company knowingly marketed medical devices that failed FDA-mandated design validation, and that it actively suppressed internal warnings related to sterilization deficiencies and manufacturing risks.[5]

19. The Lisenby complaint includes particularly troubling allegations, such as Olympus's alleged awareness that certain components of newly acquired devices were being produced in unregulated, non-sterile home environments in Asia.

20. While Plaintiff does not cite these allegations as independent proof of the facts asserted, their presence in a federal complaint filed by a high-ranking former executive supports the inference that Olympus operated with a pattern of reckless indifference to regulatory requirements and patient safety.

21. This pattern is further evidenced by Olympus's subsequent safety issues. In March 2025, the FDA issued a Class I recall—the agency's most serious designation—for certain Olympus bronchofiberscopes and bronchovideoscopes due to the risk of fire and burns during procedures involving high-frequency therapy or lasers in oxygen-rich environments.

22. The FDA had received at least seven medical device reports citing thermal-related injuries, including incidents of melting and fire. Concurrently, Olympus issued an advisory notice for its MAJ-891 Forceps/Irrigation Plug, citing potential infection risks tied to improper or incomplete reprocessing.

[5] *Lisenby v. Olympus Corp. of the Am's.*, No. 5:24-cv-01803 (E.D. Pa. filed Apr. 29, 2024), https://dockets.justia.com/docket/pennsylvania/paedce/5%3A2024cv01803/621625.CaseMine+2



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

23. These 2025 developments, when considered alongside the Class II duodenoscope recall and the *Lisenby* whistleblower allegations, further support Plaintiff's contention that Olympus has repeatedly failed to meet basic standards of safety and regulatory compliance.

**B. Mark Bruto da Costa's ERCP Procedure and Infection Timeline**

24. On May 15, 2023, Mark Bruto da Costa underwent an ERCP procedure using the Olympus TJF-Q190V duodenoscope. This model was subject to a Class II FDA recall just weeks later due to reports of post-procedure infections and positive microbial cultures—even when users followed Olympus's reprocessing protocols.

25. Mark's lab results, clinical symptoms, and ultimate cause of death provide a clear, medically supported causal link between the ERCP procedure and his VRE superbug infection.

26. On May 8, 2023, Mark Bruto da Costa underwent routine pre-procedural bloodwork, including liver function and blood culture tests, through Labcorp. The liver panel showed a normal bilirubin level of 1.0 mg/dL, and both aerobic and anaerobic blood cultures were negative—confirming that there was no evidence of systemic infection or hepatic dysfunction at that time.

27. On May 15, 2023, Mark underwent an endoscopic retrograde cholangiopancreatography (ERCP) procedure at Northwestern Hospital in Chicago, using an Olympus TJF-Q190V duodenoscope. This was part of an ongoing effort to manage a prior biliary obstruction and support his cancer care pathway.

**C. Early Stages of Infection**



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

Case 2:26-cv-01099-RSL Document 2-1 Filed 04/09/26 Page 11 of 33

28. Just three days later, on May 18, 2023, lab work completed by the University of California San Diego showed an increase in bilirubin to 1.26 mg/dL and a white blood cell count of 9.1—both elevations from baseline and suggestive of early infectious or inflammatory response.

29. On May 22, 2023, further laboratory testing conducted by Labcorp confirmed rising infection markers: white blood cell count elevated to 11.9 and bilirubin to 2.3 mg/dL. These findings confirmed progression of the suspected biliary infection initially detected on May 18.

30. By May 27, 2023, lab work from Swedish Hospital demonstrated a white blood cell count surge to 17.58 and a bilirubin level of 3.4 mg/dL—consistent with advanced cholangitis and clear systemic infection. These labs corroborate the clinical deterioration that prompted emergency hospital admission at the University of Washington just two days later.

31. May 29, 2023 – Mark presented to the University of Washington ER with right-sided pain, fever, and elevated lab markers. He and his wife reported concern that his symptoms were the result of a post-ERCP infection.

32. During this hospitalization, he was diagnosed with complications consistent with sepsis and vancomycin-resistant Enterococcus (VRE) bacteremia—a superbug infection closely associated with contaminated duodenoscopes.

33. June 12, 2023 – A second ERCP was performed in Seattle due to worsening condition.

34. Upon discharge on June 14, Mr. Bruto Da Costa required a walker or wheelchair for mobility and was no longer able to independently care for himself.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

35. Despite his declining health, he remained mentally alert and fully engaged in his care, including discharge planning. His awareness of his deteriorating condition—paired with the loss of independence and mounting physical limitations—caused him profound emotional and physical distress.

36. In a desperate attempt to save his life, his wife, Michelle Bruto da Costa, transported him from Washington to HonorHealth Scottsdale Shea Medical Center in Arizona.

**D. Decline, ICU Admission, and Confirmed VRE Sepsis**

37. On June 16, 2023, the Scottsdale specialist referred Mark to HonorHealth Scottsdale Shea Medical Center for urgent paracentesis (drainage of ascites), which was needed to relieve abdominal pressure from fluid buildup caused by hepatic dysfunction. While there, lab results revealed severe systemic infection.

38. The following morning, June 17, 2023, the hospital called urgently, instructing Michelle to bring Mark back immediately—he was in septic shock.

39. He was admitted to the Intensive Care Unit (ICU) under Critical Care services.

40. Blood cultures confirmed infection with VRE, a multi-drug-resistant organism tied to contaminated endoscopic equipment.

41. Over the course of the next eleven days, Mark remained in the ICU at HonorHealth, receiving round-the-clock care and multiple interventions. Despite the administration of targeted antibiotics and intensive support, his condition declined. His kidneys began to fail, his blood pressure plummeted, and he was eventually placed on four vasopressors in an effort to maintain perfusion.

42. He died on June 28, 2023, from septic shock due to VRE, after nearly a full month of invasive care across three medical facilities and two states.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

43. HonorHealth's microbiology reports definitively identified VRE in Mark's bloodstream, corroborating the infection's source and severity:

44. His official death certificate, issued by Arizona State, lists the immediate cause of death as multi-organ failure, the underlying cause as septic shock, and identifies metastatic colon cancer only as a contributing condition.

45. The clinical course, timing, and medical records reflect that the superbug infection (VRE), not the cancer, was the triggering event leading to his hospitalization, multi-organ failure, and death.

**E. FDA Recall, Safer Alternatives, and Olympus's Delays**

46. Between 2023 and 2025, Olympus Corporation of the Americas was associated with dozens of FDA recall events involving endoscopes, accessories, and reprocessing systems. These included multiple Class I recalls related to patient burns from bronchoscopes during laser procedures, as well as mucosal injuries and contamination risks associated with defective distal caps and reprocessor units.

47. Most critically, on July 27, 2023, Olympus issued an Urgent Medical Device Correction for the TJF-Q190V duodenoscope—the same model used in Mark Bruto da Costa's ERCP procedure. The notice cited "recent reports of infections and positive patient cultures," which the FDA had also flagged in inquiries to the company. [6]

[6] Olympus Med. Sys. Corp., *Urgent Field Safety Notice: Olympus TJF-Q190V/Q290V/Q170V Duodenoscope – New Reprocessing Manuals & Required Inspection*, QIL FY24-EMEA-13-FY24-OMSC-02 (July 27, 2023) (on file with author).



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

Case 2:26-cv-00190-RSL Document 2 Filed 01/29/26 Page 15 of 34

48. Olympus instructed users to adhere to revised reprocessing protocols, undergo periodic Olympus service inspections, and implement routine microbiological surveillance of duodenoscopes. [7]

49. The company also made updated cleaning manuals and visual aids available via web portal and by mail. These changes applied to all 6,426 units distributed nationwide.[8]

50. As part of its corrective action, Olympus required that hospitals inspect the forceps elevator mechanism after every 100 reprocessing cycles—a known site of bacterial retention that Olympus had long failed to adequately address. Yet, none of these warnings or corrective measures were issued before Mr. Bruto da Costa's May 15, 2023 procedure, despite Olympus having received adverse event reports and internal complaints months earlier.[9]

51. The FDA formally classified this action as a Class II recall on August 28, 2023 (Recall Z-2467-2023), confirming "reports of patient infections" and noting that the "root cause remains under investigation by the firm." Olympus acknowledged in a subsequent November 2023 Field Safety Notice that even its "improved" Q190V and Q290V duodenoscope models remained at risk of microbial contamination and would require expanded testing and inspections.[10]

52. This pattern of delayed response and reactive warnings illustrates Olympus's longstanding deficiencies in device design, validation, and post-market risk management.

[7] *Id.*
[8] *Id.*
[9] Id.
[10] U.S. Food & Drug Admin., *Class 2 Device Recall: Olympus TJF-Q190V Duodenoscope*, Z-2467-2023 (Aug. 28, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=202210 [https://perma.cc/3GQN-WDYN].


Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

53. Plaintiff alleges that Olympus possessed the technical and regulatory knowledge to act sooner—but failed to do so.

54. Its continued distribution of the TJF-Q190V without timely warnings or validated safeguards reflects a willful disregard for patient safety and forms the basis for Plaintiff's claims of strict liability, negligence, and punitive damages.

55. In addition to the July 2023 recall, Olympus issued a second global Field Safety Notice in November 2023, acknowledging ongoing contamination risks across multiple duodenoscope models—including the Q190V, Q290V, and Q170V—and directing all facilities to cease use of noncompliant devices and implement enhanced surveillance. [11]

56. These advisories applied to all serial numbers and reflected a reactive, rather than proactive safety posture.

57. The FDA's official classification (Recall Z-2467-2023) and Olympus's own admissions confirm that the company knew of device-linked infection risks but failed to act before Mr. Bruto da Costa's May 2023 procedure. [12]

58. Olympus has a well-documented history of litigation and regulatory scrutiny stemming from its infection-prone endoscopic devices. In 2017, the company was ordered to pay $6.6 million in damages after a jury found it liable for multiple superbug-related deaths and infections linked to its TJF-Q180V duodenoscope.

59. The following year, in 2018, Olympus faced a new trial involving additional patient deaths and allegations that the company failed to provide adequate warnings or cleaning protocols to healthcare providers.

[11] Olympus Med. Sys. Corp., *Urgent Field Safety Notice: Olympus TJF-Q190V/Q290V/Q170V Duodenoscope – New Reprocessing Manuals & Required Inspection*, QIL FY24-EMEA-13-FY24-OMSC-02 (Nov. 2023) (on file with author).

[12] *Medical Device Recalls Database*, U.S. Food & Drug Admin., Recall No. Z-2467-2023 (Aug. 28, 2023), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=202210 [https://perma.cc/3GQN-WDYN].



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

Case 2:25-cv-00970-RSL Document 18-1 Filed 05/19/25 Page 16 of 33

60. Most recently, in 2023, the FDA issued a Class I recall—its most serious level—concerning Olympus's laser-compatible bronchoscopes, citing risks of patient burns and intra-procedural combustion.

61. These past regulatory and legal findings reinforce a pattern of reactive behavior, delayed safety disclosures, and persistent risks tied to Olympus scopes.

62. Superbugs are drug-resistant organisms that defy standard treatment, often turning otherwise survivable infections into fatal ones. One of the most dangerous is vancomycin-resistant Enterococcus (VRE)—the exact organism confirmed in Mark's bloodstream following his Olympus ERCP. [13]

63. VRE infections are frequently associated with hospital-acquired conditions, do not respond to frontline antibiotics, and are commonly linked to contaminated reusable endoscopic devices such as duodenoscopes.

64. ERCPs inherently carry infection risk due to the insertion path and complexity of the bile duct system. When Olympus failed to address known sterilization challenges despite device redesign, it created a perfect storm—one that Mark Bruto da Costa tragically encountered.

65. At the time the Olympus TJF-Q190V duodenoscope was used in the ERCP procedure on Mark Bruto da Costa, safer alternative designs were both technologically feasible and already available on the U.S. market. Olympus failed to adopt, implement, or adequately warn about these alternatives, despite widespread recognition of their role in mitigating known infection risks.

---

[13] N.Y. State Dep't of Health, *Vancomycin-Resistant Enterococcus (VRE)* (Nov. 2011), https://www.health.ny.gov/diseases/communicable/vancomycin_resistant_enterococcus/fact_sheet.htm [https://perma.cc/5YZV-HR4F].



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

**66.** As early as 2015, following national outbreaks of multidrug-resistant infections linked to contaminated duodenoscopes, the U.S. Food and Drug Administration (FDA) urged manufacturers to design devices that could either be fully disposable or include disposable components, particularly at the distal end where reprocessing is most difficult. [14]

**67.** In its communications, the FDA explicitly acknowledged the inherent limitations in effectively cleaning reusable duodenoscopes, warning that "the complex design of duodenoscopes may impede effective reprocessing... even when manufacturer instructions are followed correctly"[15]

**68.** To better protect patients and reduce the risk of infection transmission, the FDA went further, recommending that hospitals and endoscopy facilities transition to duodenoscopes with innovative designs that either facilitate cleaning or eliminate the need for reprocessing altogether.— FDA Statement, April 5, 2022

69. At the time of Mr. Bruto Da Costa's May 2023 ERCP procedure, multiple FDA-cleared alternatives to traditional reusable duodenoscopes were commercially available, each designed to address long-standing infection transmission concerns.

70. Among them was the Boston Scientific EXALT™ Model D, cleared in December 2019 under the FDA's Breakthrough Devices Program. It is a fully disposable duodenoscope,

---

[14] U.S. Food & Drug Admin., *Infections Associated with Reprocessed Duodenoscopes*, https://www.fda.gov/medical-devices/reprocessing-reusable-medical-devices/infections-associated-reprocessed-duodenoscopes [https://perma.cc/VHQ9-47V2].

[15] U.S. Food & Drug Admin., *Infections Associated with Reprocessed Duodenoscopes*, https://www.fda.gov/medical-devices/reprocessing-reusable-medical-devices/infections-associated-reprocessed-duodenoscopes [https://perma.cc/Z96C-HMHL].



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

designed for one-time use and complete disposal after each procedure—eliminating the need for reprocessing altogether and with it, the primary risk of cross-contamination.[16]

71. In contrast, the Olympus TJF-Q190V, cleared in January 2020, featured only a partially disposable distal endcap. While Olympus promoted this as a reprocessing enhancement, the rest of the device—including the complex internal elevator mechanism and instrument channel—remained reusable and difficult to fully sterilize.[17]

**72.** The FDA has explicitly cautioned that duodenoscopes with disposable components, like the TJF-Q190V, still require meticulous reprocessing and may pose ongoing contamination risks. [18]

**73.** If hospitals are not adequately trained, or if Olympus's device design does not facilitate thorough cleaning, residual contamination can persist between uses—a risk that fully disposable models are designed to eliminate entirely.

74. Under product liability principles and applicable state law, a feasible, safer alternative design defeats claims that the device was "reasonably safe" or that the risks were unavoidable.

75. Olympus had both the technical capability and regulatory knowledge to shift toward designs that eliminated or materially reduced the infection risk. Its failure to do so—

---

[16] U.S. Food & Drug Admin., *FDA Clears First Fully Disposable Duodenoscope, Eliminating the Potential for Infections Caused by Ineffective Reprocessing* (Dec. 13, 2019), https://www.fda.gov/news-events/press-announcements/fda-clears-first-fully-disposable-duodenoscope-eliminating-potential-infections-caused-ineffective [https://perma.cc/9U4B-Q6Q7].

[17] U.S. Food & Drug Admin., Letter to Sheri Musgnung, Regulatory Affairs Manager, Olympus Corp. of the Americas, Re: K193182 – Evis Exera III Duodenovideoscope Olympus TJF-Q190V (Jan. 17, 2020), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm [https://perma.cc/3QFZ-27RZ].

[18] U.S. Food & Drug Admin., *Infections Associated with Reprocessed Duodenoscopes*, https://www.fda.gov/medical-devices/reprocessing-reusable-medical-devices/infections-associated-reprocessed-duodenoscopes [https://perma.cc/VHQ9-47V2].



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

Case 2:26-cv-00709-SL Document 1 Filed 01/09/26 Page 20 of 34

despite clear FDA guidance and available technology—demonstrates recklessness, willful disregard for patient safety, and a breach of its duty to warn and protect.

76. Numerous peer-reviewed studies and FDA safety communications confirm that Olympus duodenoscopes—including the TJF-Q180V and TJF-Q190V models—have a documented history of persistent bacterial contamination and transmission of multidrug-resistant organisms (MDROs), even when reprocessing guidelines were followed.

77. A 2018 *Journal of the American Medical Association* (JAMA) study found that up to 20% of "cleaned" duodenoscopes still harbored live microbes, posing infection risks during subsequent procedures.[19]

78. The FDA's 2019 Safety Communication warned that "effective cleaning of duodenoscopes remains a challenge," particularly for Olympus models with complex distal-end elevator mechanisms.

## V. CONCLUSION

### F. Pain, Suffering, and Dignity Lost in Mark's Final Days

79. This case is not merely about a defective device—it is about a man, a devoted loving husband, and a father of five young children, whose final weeks were consumed by a preventable and torturous medical crisis. Mark Bruto da Costa endured escalating pain, physical collapse, and profound indignity, fully aware of his deterioration, as infection from a contaminated duodenoscope ravaged his body. He entered the hospital walking and hopeful, fresh from pursuing life-extending care across three states. He died weeks later in an ICU bed, unable to eat, speak, or move—his organs failing one by one, his

[19] A 2018 *Journal of the American Medical Association* (JAMA) study found that up to 20% of "cleaned" duodenoscopes still harbored live microbes, posing infection risks during subsequent procedures.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

body swollen beyond recognition, and his spirit broken by suffering no one should have to endure, as his wife helplessly watched him slip away in the most heartbreaking way.

80. These were not anonymous final moments. They were witnessed—by his wife, who fought tirelessly for him; by his five children, whose lives will forever bear the weight of this loss; and by a healthcare system that failed to heed the signs until it was too late. The law provides a remedy not just for regulatory infractions, but for human loss, for the conscious suffering of a dying man, and for the decisions that allowed it. This case seeks that remedy. Olympus's refusal to warn, its delay in correcting known defects, and its pattern of putting market share ahead of patient safety are not abstract failures. They are the choices that led directly to Mark Bruto da Costa's horrific death. The claims here are grounded in law—but they are driven by justice, for Mark, for his family, and for the patients who remain at risk.

## VI. CAUSES OF ACTION

### 1. Count – Wrongful Death (RCW 4.20.010)

81. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

82. The wrongful death of Mark Bruto da Costa was caused by Olympus's negligent and defective medical device—the TJF-Q190V duodenoscope. Mr. Bruto da Costa was a 44-year-old husband and father of five who underwent an ERCP procedure using this duodenoscope on May 15, 2023.

83. Within 36 hours, his lab values showed early infection signs.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

84. He subsequently developed VRE septicemia, a superbug tied to contaminated duodenoscopes.

85. Despite multiple hospitalizations and a second ERCP, Mr. Bruto da Costa deteriorated and died from multi-organ failure on June 28, 2023.

**2. Count – Strict Products Liability – Design Defect (RCW 7.72.030(1)(a))**

86. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

87. Olympus designed, manufactured, and distributed the TJF-Q190V with a partially disposable design that retained critical components—such as the elevator mechanism and internal channels—that were difficult to sterilize. Olympus's own 2023 recall acknowledged ongoing contamination risks.

88. The existence of safer, FDA-cleared alternatives (e.g., Boston Scientific's EXALT™ Model D) supports the argument that the TJF-Q190V was not reasonably safe as designed.

**3. Count – Strict Products Liability – Failure to Warn (RCW 7.72.030(1)(b))**

89. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

90. Olympus failed to warn clinicians and hospitals about the persistent contamination risks of the TJF-Q190V duodenoscope prior to Mr. Bruto da Costa's procedure.

91. Despite receiving MAUDE reports, FDA letters, and internal complaints, Olympus delayed corrective action.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

92. The recall and safety notices were issued in July and November 2023—months after Mr. Bruto da Costa's fatal exposure.

93. Plaintiff alleges these omissions deprived treating providers of critical infection risk information.

**4. Count – Negligence – Design, Testing, Monitoring, and Post-Market Surveillance (Common Law)**

94. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

95. Olympus breached its duty to design a safe device, monitor adverse events, and act promptly on known risks.

96. Upon information and belief, Olympus's internal documents show systemic failure to validate reprocessing safety.

97. Olympus delayed implementation of enhanced inspection and microbiological protocols, which were only recommended after widespread contamination reports and regulatory pressure.

**5. Count – Survival Action (42 Pa. C.S.A. § 8302)**

98. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

99. Mr. Bruto da Costa experienced conscious pain and suffering from May 17 through June 28, 2023, including escalating infection symptoms, loss of mobility, multiple hospitalizations, and ICU confinement. Medical records document physical deterioration,


Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

use of vasopressors, organ failure, and loss of dignity (e.g., being unable to toilet himself). He remained alert during much of this period and was aware of his decline. These support recovery under Pennsylvania's survival statute for pre-death pain, suffering, and medical costs.

**6. Count – Punitive Damages (Pennsylvania Law, 42 Pa. C.S.A. § 8301)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.
2. Plaintiff alleges Olympus's conduct rises to the level of recklessness and willful disregard. Olympus marketed a duodenoscope it knew was subject to contamination—even after its own reviews and FDA communications flagged the issue.
3. Olympus failed to act prior to Mr. Bruto da Costa's procedure despite clear risk signals. The company's prior $646 million DOJ settlement, its pattern of post-market delay, and recent whistleblower allegations further show a persistent failure to prioritize patient safety.

## VII. PROXIMATE CAUSE AND DAMAGES

4. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.
5. The acts, omissions, negligence, and wrongful conduct of Defendants—each of them individually, jointly, and as joint venturers—were the direct, sole, and proximate cause of the injuries and damages sustained by Plaintiff and the decedent.

## VIII. PRAYER FOR RELIEF


Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK 73162, 602-218-1404,
attorney@6directionslaw.com

6. Plaintiff Michelle Bruto da Costa, individually and as the personal representative of the Estate of Mark Bruto da Costa, respectfully prays for judgment against all Defendants, jointly and severally, and requests the following relief:

7. Plaintiff seeks all compensatory damages permitted under the Washington Wrongful Death and Survival statutes, RCW 4.20.010, RCW 4.20.020, RCW 4.20.046, and RCW 4.20.060, including economic losses, funeral and burial expenses, medical costs, lost net accumulations to the Estate, and damages for pre-death pain and suffering, emotional torment, anxiety, fear, and the conscious awareness of decline suffered by Mr. Bruto da Costa prior to his death. Plaintiff also seeks recovery for loss of consortium, loss of guidance, household support, and companionship sustained by Plaintiff and her five surviving children.

8. Plaintiff additionally seeks all survival damages available under Pennsylvania law, including 42 Pa. C.S.A. § 8302, for the conscious pain and suffering, loss of life's pleasures, emotional distress, and medical expenses incurred by Mr. Bruto da Costa prior to his death. These damages are sought on behalf of the Estate and for the benefit of the statutory beneficiaries.

9. Plaintiff further seeks punitive and exemplary damages under Pennsylvania law, including pursuant to 42 Pa. C.S.A. § 8351, based on Defendants' willful, wanton, and reckless disregard for the health and safety of patients. Plaintiff alleges that Olympus and its related entities made corporate decisions from Pennsylvania that knowingly placed patients at risk through defective device design, delayed disclosure of known hazards, and failure to implement safer alternatives, despite FDA warnings and public health risks.



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

10. Plaintiff seeks recovery of all damages in an amount to be proven at trial but believed to exceed several million dollars, for the benefit of the Estate and the statutory beneficiaries, including Plaintiff and the couple's five minor children. These damages are not limited to those outlined above and may include all other forms of relief available under Washington and Pennsylvania law.
11. Plaintiff also seeks prejudgment and post-judgment interest as allowed by law, the costs of suit, including reasonable attorneys' fees and expert expenses where authorized, and any other relief the Court deems just and proper under law or equity.

## IX. JURY DEMAND

12. Plaintiff hereby invokes her constitutional right to trial by jury

## IX. NO ELECTION OR WAIVER

13. Plaintiff affirms that this action is brought under the claims and statutes currently known and alleged herein. Plaintiff expressly reserves the right to amend this Complaint to assert additional or alternative claims under applicable federal or state law, including but not limited to Washington law, as facts are developed through discovery. This filing does not constitute an election of remedies or a waiver of any legal rights or claims.

Respectfully Submitted,

DATED this 14 day of May, 2025, in Oklahoma City, Oklahoma



Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

By:___/s/Sarai Cook______________
Sarai Cook, 6Directions PLLC
WSBA No. 57432
4605 Dove Tree LN, Oklahoma City, Oklahoma, 73162
,602-218-1404
attorney@6directionslaw.com
Attorney for Plaintiffs

## X. PHOTOGRAPHIC EXHIBITS

The following photographic exhibits provide visual documentation of the physical decline experienced by Mark Bruto da Costa between May and June 2023, following his ERCP procedure using an Olympus TJF-Q190V duodenoscope. These images are submitted to support allegations of injury, pain, and suffering resulting from the contaminated device and associated medical complications.

**Exhibit A: May 12, 2023 – The Week Before the ERCP Procedure**

Photograph taken shortly before Mr. Bruto da Costa's ERCP procedure, during his travel from Seattle to Chicago. He was ambulatory, alert, and optimistic. His physical condition was strong enough to allow cross-country travel, and he remained hopeful regarding his treatment plan.





Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

**Exhibit B: May 15, 2023 – Post-Procedure Recovery Room**

Photograph taken immediately after the ERCP procedure at Northwestern Hospital. Mr. Bruto da Costa is seen shortly after being brought out of sedation. His wife was allowed into recovery. This was the last time he appeared stable before showing signs of infection.






Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

**Exhibit C: May 29, 2023 – Discharge from University of Washington Medical Center**

Two weeks after the ERCP, this photo shows Mr. Bruto da Costa being discharged from the University of Washington following a hospitalization related to rising bilirubin levels and confirmed VRE bacteremia. His liver function had significantly deteriorated at this point.





Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

**Exhibit D: June 17, 2023 – Day Two at HonorHealth Shea in Scottsdale, Arizona**

Photograph taken one day into Mr. Bruto da Costa's ICU admission in Scottsdale. He had been urgently transferred due to worsening abdominal swelling and respiratory distress. Blood cultures confirmed sepsis, and his condition was rapidly deteriorating.





Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com

**Exhibit E: June 28, 2023 – Final Days of Life in the ICU**

Photograph showing Mr. Bruto da Costa in critical condition shortly before his passing. He was suffering from organ failure, including hepatic and renal collapse, and underwent repeated procedures to drain ascites and relieve fluid pressure. This image documents the physical toll of VRE sepsis that ultimately caused his death at age 44.





Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com





Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com







Sarai Cook, 6Directons PLLC
WSBA # 57432
4605 Dove Tree LN, Oklahoma City, OK
73162, 602-218-1404,
attorney@6directionslaw.com